# APRIL TERM, 1872, AT DETROIT.

## Levi Morrill and another v. Robert Mackman.

*Equitable estoppel.* In an action for damages to land, caused by the setting back of water, by means of a mill-dam, where the evidence discloses simply that the defendant, and his grantor of the mill-site for several years before him, had flowed the land and paid a yearly compensation therefor, in the absence of any showing that the original construction 'of the dam was in reliance upon any license, or that the course of the defendant, or his grantor, was changed, or any expenditure made in reliance upon any conduct or promise of plaintiff, the doctrine of equitable estoppel does not apply.

*License defined.* A license is a permission to do some act or series of acts, on the land of the licensor, without having any permanent interest in it. It is founded on personal confidence, and is, therefore, not assignable; it may be in writing or by parol; it may be without consideration; it is subject to revocation and is not within the statute of frauds.

When something beyond a mere temporary use of the land is promised, and the promise is not founded on personal confidence, but has reference to the ownership and occupancy of other lands, and is made to facilitate the use of those lands in a particular manner and for an indefinite period, so that the right to revoke at any time would be inconsistent with the evident purpose of the permission, the interest is something more than a license.

*Agreement: Right to flow lands: Tenancy.* An agreement properly evidenced, giving the owner of a mill-site the right, for a stipulated annual compensation, to flow the adjoining lands of another for an indefinite period, by the erection of a dam upon his own premises, creates a tenancy in such lands.

*Parol agreement: Statute of frauds: Tenancy from year to year: Notice to quit.* Such an agreement is within the statute of frauds; but that statute permitting leases for a year to be created by parol, and a parol lease for more than a year, under which the lessee has been put in possession, being good as a lease from year to year until terminated by notice, an action cannot be maintained against one in possession under such an agreement, created by parol, except for the agreed compensation, without notice to quit.

*Heard November 2. Decided April 3.*

Error to St. Clair Circuit.

*Chadwick & Parsons* and *John Atkinson,* for plaintiffs in error.

*Cyrus Miles* and *F. H. Canfield,* for defendant in error.

COOLEY, J.

The plaintiffs in error, defendants below, were sued to recover for damages to the lands of the plaintiff below, caused by the setting back of water upon such lands by means of a mill-dam. The dam appears to have been erected by a person through whom the defendants derived title, and the wrong alleged against them consisted in keeping it up after they became owners. It seems to have been supposed by the parties .that the dam was originally built, and the land flowed, by permission of the then owner of such land, and a license for its construction and continuance was relied upon as a defense to the action. What the permission was, however, and when and under what circumstances and for what consideration given, we are not informed; and we are consequently wholly in the dark regarding some important facts which were taken for granted on the argument. What does appear very distinctly is, that the grantor of the defendants for several years occupied by flowing several acres of the land of the plaintiff, paying him therefor a yearly compensation; that this occupation continued until the defendants bought, and from thence until the bringing of the suit; that the plaintiff thought the compensation too small, and insisted on its being increased, and that various negotiations were had with the defendants on the subject, resulting in no definite understanding. There was evidence, however, from which the jury might be warranted in finding that the plaintiff had accepted from the defendants, for some years, the usual annual compensation before paid by their grantor, and there was no evidence and no claim that the plaintiff had given to them any notice to terminate their occupancy, except what might be implied from the demand for increased compensation, and from a notification at one time, when the flash boards were gone, that the dam must not be raised again.

Had it appeared that the plaintiff, for a valuable consideration, assented to the erection of the dam in the first place, and that the defendants, or some one through whom they derive title, incurred expenses in reliance upon this permission before it had been recalled, we should have felt it our duty to consider the important and difficult question discussed by counsel, whether the doctrine of equitable estoppel is not applicable to the case, and if so, whether the defendants were not at liberty to rely upon it when they were seeking at law merely to defend their possession. But when the record fails to disclose any evidence upon which the jury could be asked to find that the original construction of the dam was in reliance upon any license, we should wander from the case if we assumed to discuss the question referred to. The most that appears is, that the plaintiff at one time worked upon the dam when it was being repaired; but at most, this only showed his assent to the keeping up of a dam already built, and could go no farther in making out an estoppel against withdrawing the assent, than would the acceptance of compensation for the flowing. An equitable estoppel may arise where one person has induced another to act upon the supposition that a certain state of facts exists which does not exist in fact, or has pursued a course of conduct in respect to his own property or rights which has led another into expenditures which are to be lost, or into action which is to prove detrimental, if the party so misleading is allowed afterwards to assert rights inconsistent with such previous course of conduct. We have examined this record with care, and find nothing in it which would have justified the jury in finding that the course of the defendants, or of their grantor, was changed, or that their expenditures were made in reliance upon any conduct or promise of the plaintiff; and we

24 MICH.—36.

therefore are of opinion that the question of estoppel is not involved.

The record nevertheless presents for consideration a question of no little importance. It was not disputed on the trial that the plaintiff, for a certain period at least, had received an annual compensation for the flowing of his land. The questions in dispute concerned the quantity of land flowed; whether it had been increased since the defendants bought; whether the plaintiff had accepted from them the amount of a certain bill for sawing in satisfaction of damages caused by the flowing for a certain period, and what the measure of damages ought to be, if it should appear that defendants had not established their justification. The defendants insisted that under the facts shown, the relation of landlord and tenant existed between the plaintiff and themselves, and that as his tenants they were entitled to notice to quit before they could be treated as wrongdoers; and they requested the circuit judge to charge that "the use by the defendants and their grantors of the dam, and the flowing for a long number of years for an agreed and fixed compensation, constitutes defendants tenants of the plaintiff, and an action cannot be maintained except for the agreed compensation, without notice to quit." This request was refused, and the judge in effect charged that the plaintiff's consent to the flowing was a revocable license, and the defendants were liable in this action if they continued the flowing after the license had been revoked.

A license is a permission to do some act or series of acts on the land of the licensor without having any permanent interest in it.—*3 Kent, 452; Cook v. Stearns, 11 Mass., 538; Woodbury v. Parshley, 7 N. H., 237; Prince v. Case, 10 Conn., 375; Wolfe v. Frost, 4 Sandf. Ch., 91.* It is founded on personal confidence, and therefore not assignable.—*3*

*Kent, 452; Browne on Stat. of Frauds,* § *22.* It may be given in writing or by parol; it may be with or without consideration; but in either case it is subject to revocation, though constituting a protection to the party acting under it until the revocation takes place. Where nothing beyond a mere license is contemplated, and no interest in the land is proposed to be created, the statute of frauds has no application, and the observance of no formality is important. But there may also be a license where the understanding of the parties has in view a privilege of a less precarious nature. Where something beyond a mere temporary use of the land is promised; where the promise apparently is not founded on personal confidence, but has reference to the ownership and occupancy of other lands, and is made to facilitate the use of those lands in a particular manner and for an indefinite period, and where the right to revoke at any time would be inconsistent with the evident purpose of the permission; wherever, in short, the purpose has been to give an interest in the land, there may be a license but there will also be something more than a license, if the proper formalities for the conveyance of the proposed interest have been observed. What that interest shall be called in the law may depend upon the character of the possession, occupancy or use, the promisee is to have, the time it is to continue, and perhaps upon the mode in which the compensation, if any, is to be made therefor. It may be an easement or it may be a leasehold interest; or if the proper grant or demise has not been executed for the creation of either of these, the permission to make use of the land may still constitute a protection to the party relying upon it, until withdrawn.

There was evidence in the case from which the jury would have been justified in finding that a permanent occupation of a portion of the plaintiff's land by flowing was

contemplated by the understanding between him and the party from whom the defendants derive title. It would be a reasonable inference, also, that the permission for such occupation was not founded in personal confidence, but was given in view of the ownership of the mill, and was designed to enable those who should be owners from time to time to make their use of the mill beneficial to themselves and to the community by means of the water-power thus obtained. It cannot be supposed that a right to recall the permission at any time was understood to be reserved, for this would render it in the highest degree impolitic and imprudent to rely upon and act under it. Indeed, it is undeniable that, were the right claimed by defendants fully assured to them by proper grant or conveyance, it would be an interest in the land, and not a revocable license. And being such an interest, a deed, by the express terms of the statute of frauds, would be essential to create it.—*Comp. L.*, § *3177 ; Browne on Stat. of Frauds*, §§ *24, 232.*

An interest in lands for flowing, is generally a mere easement. An easement is a right which one proprietor has to some profit, benefit or lawful use, out of, or over, the estate of another proprietor.—*Ritger v. Parker, 8 Cush., 145 ; Washb. on Easements, 4.* It does not displace the general possession by the owner of the land, but the person entitled to the easement has a qualified possession only, so far as may be needful for its enjoyment.—*Washb. on Easements, 8.* But there may also be a tenancy in respect to the lands flowed, or to the right to flow. A tenancy exists where one has let real estate to another, to hold of him as landlord. When duly created and the tenant put in possession, he is owner of an estate for the time being, and has all the usual rights and remedies of an owner to defend his possession. But a tenancy does not necessarily imply a right to com-

plete and exclusive possession; it may, on the other hand, be created with implied or express reservation of a right to possession on the part of the landlord, for all purposes not inconsistent with the privileges granted to the tenant. One who, on the land of another, puts in a single crop on shares, is held not to be a lessee.—*Hare v. Celey, Cro. Eliz.,* § *143.* But this does not seem to be because his possession is not exclusive; but because, it being for the interest of the owner of the land that they should be tenants in common of the growing crop, their contract will be presumed to have contemplated that relation. See *Bishop v. Doty, 1 Vt., 37; Bradish v. Schenck, 8 Johns., 151; De Mott v. Hagerman, 8 Cow., 220.* And in the leading case, while it is held that there is no tenancy if the agreement is for a single crop, it is said it will be "otherwise if it be for two or three crops."—*Hare v. Celey, Cro. Eliz.,* § *143.* Though doubtless the owner of the land might, in that case equally as in the other, retain the general possession, while the cultivator would have the qualified possession essential for his purposes. In any case, the intent of the parties, as gathered from their contract, would be the governing consideration in determining the nature of the relation between them, and the proposed duration of that relation would be one of the most important circumstances to be considered in arriving at that intent.

The evidence in the case at bar showed clearly that the flowing by defendants was of a nature to exclude all use of the land by the plaintiff for agricultural purposes. An agreement giving or continuing to them this right, may consequently be fairly supposed to contemplate the giving of an exclusive possession. Whether it was not consistent with this agreement that the plaintiff should retain some right to make use of the same land, we need not consider, since there can be no question that a legal right to flow

would exclude any occupation inconsistent therewith. The evidence tended to show that this right to flow was to be for an indefinite period, and on payment of an annual compensation. The agreement therefor, however, does not appear to have been in writing, and it was consequently void under the statute of frauds. But we think that if the privilege had been granted by deed, a tenancy would have been created. All the usual incidents of a tenancy would have existed; possession by the grantee with right of enjoyment, and an annual return for such enjoyment, which, whether called rent or not, would have been rent in fact.— *Browne on Stat. of Frauds,* § *28* ; *Taylor Land. & Ten.,* § *31; Mumford v. Whitney, 15 Wend., 380.*

It only remains to consider whether the parol agreement, being invalid under the statute of frauds, was good for any purpose. That statute permits leases for a year to be created by parol. It has always been held that a parol lease for more than a year, reserving an annual rent, under which the lessee, has been put in possession, was good as a lease from year to year until terminated by notice.— *Clayton v. Blakey, 8 T. R., 3 ; People v. Rickert, 8 Cow., 226 ; McDowell v. Simpson, 3 Watts, 129.* We think this ruling applicable to the present case, and that the defendants were entitled to have the jury instructed in accordance with their request as above given.

For the error of the judge in refusing that request, the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.