Dickman J.
The Pennsylvania & Ohio Canal Company was incorporated in the year 1827, by a special act of the General Assembly of the State of Ohio, and by a special act of the General Assembly of Pennsylvania, for the purpose of constructing and maintaining a navigable canal from a point on' the Ohio Canal, at Akron, Ohio, to the waters of the Mahoning River, and thence to meet or intersect the Pennsylvania, or Chesapeake & Ohio Canal *662 at or near Pittsburgh, Pennsylvania, etc. On account of the Company’s neglect to keep its canal in repair, it was, in 1872, by proceedings in the nature of a quo warranto, ousted from its corporate franchises received from the State of Ohio, and dissolved, and a trustee was thereupon appointed as required by statute.
The controlling question for our consideration in this case is, whether the right acquired by the company to flow the lands of John Stewart, the defendant in error, by erecting and maintaining the dam across the Mahoning River to the height of fourteen feet, survived and vested in the mill owners after the dissolution of the corporation. The record does not disclose that the defendant ever received any compensation from the company for the burden imposed upon his land, except the benefit that may have accrued from its proximity to the canal, and the facilities of transjjortation thereby secured. And we fail to discover any good reason, why the burden should be of perpetual duration, while the compensating advantages no longer exist.
By the act incorporating the Canal Company, the corporation was authorized to construct a navigable canal, with all necessary locks, basins, waste weirs, dams, and other necessary appendages.
Section 8 provides, that, for the purpose of assuring to the corporation, all the lands, real estate, and waters requisite for most economically constructing' and maintaining the canal, and the works connected therewith, and incident and necessary to the navigation of the same, the corporation might, whenever such lands, and waters could not be obtained by voluntary donation or fair purchase, enter upon, take possession of and use all such lands, real estate, and streams, as might be necessary for the purposes aforesaid — the company satisfying and paying all damages occasioned thereby.
Under the provisions of section 5, the corporation was, authorized and empowered to purchase and hold to them *663 and their successors forever, real and personal estate, to any amount necessary for constructing, maintaining, and repairing the canal, and the works connected therewith; to receive, 'hold, and take all voluntary grants and donations of lands and real estate, which might be made to aid the objects of the corporation; and whenever in either of the ways above designated, the corporation should become possessed of, and own any lands or real estate, which it might be unnecessary to retain, it was empowered to lease, alien, and convey the same, by lease or deed, ■with the corporate seal thereto affixed. But, all lands and waters belonging to the corporation, and necessary for the navigation of the canal and for maintaining and repairing the same, and the works connected therewith, were to be held and applied to and for the objects and purposes of the corporation.
Section 9 contains a provision, that whenever any lands, waters, or streams should be taken and appropriated for the location or construction of the canal, the damages sustained by the opening of the canal, over and above accruing benefits, should be estimated and assessed by commissioners, whenever the proprietor or proprietors could not agree with the corporation, as to the amount of damages or compensation which ought to be allowed and paid therefor.
The act of incorporation, as will be observed, prescribes three modes of acquiring title to lands or real estate — by donation, purchase, and appropriation. It is obvious from the language and provisions of the act, that the legislature intended to authorize the company to acquire by donation or purchase an absolute estate in fee in lands, in aid of the objects of the corporation. Upon a dissolution of the corporation, the lands so held in fee simple would not revert to the original owners, but would remain to be disposed of for the benefit of the creditors and stockholders of the company. And during the life of the corporation, it was empowered to alien and convey in fee simple lands *664 ■which it had thus received by donation and purchase, if it should become unnecessary to retain the same for the purposes of the canal.
But a different rule prevails where lands and easements are acquired by appropriation or proceedings in invitum. The Pennsylvania & Ohio Canal Company had the undoubted right to take and hold lands in fee, but such taking was to be by gift or purchase, and not by right of eminent domain. The right derived under section 8 “ to enter upon, take possession of, and use ” lands, real estate, and streams, cannot be enlarged by implication into an estate beyond the corporate existence of "the company. The property being taken for public use, when that use ceases, it must revert to the owner of the soil from whom it was taken, relieved of the burden or easement which the sovereign power has imposed. And in view of this ultimate reverter, the act of incorporation makes no provision for valuing the land itself appropriated under the right of eminent domain, but only for assessing damages for injury done thereto by the opening of the canal through the same. The eighth section of the act passed February 4, 1825, entitled “An act to provide for the internal improvement of the State of Ohio by navigable canals ” conferred upon the State the power to “ enter upon and use, all and singular, any lands, waters, streams, and materials necessary for the prosecution of the improvements intended by the act.” But, unlike section 3, it further provided that in case any lands, waters, streams, or materials should be taken and' appropriated for the purposes aforesaid, “ the fee simple of the premises so appropriated shall be vested in the State.” By virtue of this express provision for vesting a fee simple, and not from the power to “ enter upon and use,” it was held in Malone v. Toledo, 34 Ohio St., 541, that the title acquired by the State by the appropriation of lands for canal purposes, under the eighth section of the act of February 4,1825, was an absolute estate in fee.
*665 The Warren County Canal Company, incorporated by the General Assembly of Ohio, February 22, 1830, was authorized by its charter “ to enter upon, take and use ” such lands as might be necessary for the location and construction of its canal. In Corwin v. Cowan et al., 12 Ohio St., 629, 632, the court say, “it. is conceded in this case that the Warren County Canal Company, by virtue of its charter, only acquired an easement in the lands appropriated for the location and construction of its canal. This right to occupy and use lands for the purposes of a canal, it is clear, would not carry with it the fee of the lands appropriated for the purpose.” While the State constitu•tion of 1802 guaranteed the inviolability of private property, but declared it should always be subservient to the public welfare, provided a compensation in money be made to the owner, yet, as it had been settled by judicial decision that the legislature, in the exercise of the right of eminent domain, had, under the old constitution, the power to take from the owner the absolute fee simple of his land, without any other compensation than the benefits to accrue from the uses for which the land might be' taken, it should not be held that the legislature intended to empower a corporation to appropriate the fee simple of land, and compensate the owner in resulting benefits, unless the intention be made manifest in plain and unambiguous terms. But, whether the property taken is paid for in money or in accruing benefits and advantages, it should clearly appear by the terms of the act that it was the legislative intent to take a fee before such effect can be given to it. In the absence of express words, a fee will not be deemed to be taken where the purposes of the act will be satisfied, as in the case at bar, with the taking of an easement. Washington Cemetery v. Prospect Park & Coney I. R. R. Co., 68 N. Y., 591. “ In any case,” says Judge Cooley, “ an easement only would be taken, unless the statute plainly contemplated and provided for the appropriation of a larger interest.” Const. Lim., 559.
*666 In the case of Pittsburgh & Lake Erie R. R. Co. v. Bruce, 10 Am. & Eng. R. R. cases, 1, the Supreme Court of Pennsylvania, January, 1883, in construing section 3 of the charter of the Pennsylvania & Ohio Canal Company, .says, “Herein we find a power to take and use lands, waters, and materials as may be necessary to construct and maintain the proposed works, but in this there is no grant of a right to take the fee in land thus occupied; on the contrary, that right is confined to use and occupation only, unless it be enlarged by the deed or gift of the owner. There was then, in this company, but a possession and use; in other words, a right of way, and that for a single purpose, the construction and maintenance of a canal, and when the canal was abandoned, the use and occupation of the land reverted to the owner of the fee. It follows, the possession having thus revested in the owner, he may maintain any action that is necessary to regain his rights or to protect his property.” See also Jessup v. Loucks, 55 Pa. St., 350.
It is obvious, therefore, and in accord with well settled principles, that whatever interest or easement in the lands of the defendant in error, Stewart, the Pennsylvania & Ohio Canal Company may have acquired by the right of eminent domain and not by donation or purchase, expired with the dissolution of the corporation. It is not claimed that the canal company, before or after erecting its dam across the river, acquired by grant, donation, or purchase from Stewart, the right to inundate or flow his lands lying above the dam. And we think that the company obtained no such right by the purchase in fee simple from David Houston of the land on which the south half of the dam was constructed, nor by the agreement with George Hunter for the privilege of using and occupying the site of the north half of the dam, which was owned by Hunter in fee simple, and of which the company never became the owner. Houston and Hunter, as owners of the site upon which the dam was erected, had not the right, as *667 incident to their ownership of the land in fee, to inundate or flow the lands of riparian proprietors above on the same stream, and no claim is advanced that they ever acquired the easement of flowing the lands above by express grant or by prescription. • As riparian proprietors, they had the right to the flowing water — to the simple use of it while it passed along-— as appertaining to their property in the land; but, they were, at the same time, subject to the injunction'of the law, that they must so use their own as not to. injure that which belongs to another. Hunter, it is true, had built on the north side of the stream a dam of the height of about three feet, made of brush, and furnishing water for a grist-mill; but, it had never had any appreciable effect in obstructing the passage of the water, or in raising the low water level of the river, and had been kept up for a short period rather by sufferance than under claim of right. By virtue of the purchase and deed from the owner of one-half of the site of the dam, and by the agreement with the owner of the other half, the canal company succeeded to the rights of the owners and to no more. The company having thus extinguished the title of one proprietor, and secured the concurrence of the other, proceeded to erect the dam to the height that caused the flowage of the lands of Stewart, the defendant in error. The company was fully authorized to erect the dam. But it derived its power to do so from its charter alone, which clothed it with certain powers, privileges, and franchises, to be exercised for public use, and to cease when the public user ceased..
We have seen, that when under the authority “to enter upon, take possession of, and use,” a corporation takes -private property for public use, the interest acquired is but an easement. Yet, an easement may involve the right to possess, use, and enjoy; and when an easement of any sort is taken in property, a certain portion of the property is taken. It may not displace the general possession by the owner of the land, but the person entitled to the easement *668 lias a qualified possession, so far as may be needful for its enjoyment. Eaton v. Boston & Maine R. R., 51 N. H., 504, 511; Morrill v. Mackman, 24 Mich., 279, 284.
The right of flowing land being an easement or interest in the land, its acquisition comes within that class of interests, which the Pennsylvania & Ohio Canal Company was authorized to acquire by entering upon, taking possession of, and using, lands, real estate, and streams, under the provision of section 3 of its charter.
It is contended, that the Canal Company, after the construction of the dam, conveyed to certain mill owners in fee simple, the land upon which one-half of the dam was built, and granted to them and other mill proprietors and their heirs, in fee simple, the right and privilege of using the surplus water of the dam not required for the use of navigation, and that by sundry mesne grants and conveyances, the rights and interest of such mill owners have become the property and inheritance of the plaintiffs in error. As long as the Canal Company kept the canal in repair, in compliance with the requirement in its charter, and until the corporation was dissolved, the mill owners were entitled to the surplus water, and Stewart had no legal ground of complaint, on account of the height of the dam or the burden imposed upon his lands by fiowage. Rut the Canal Company had no power to transmit to others, in perpetuity, privileges and franchises which it derived from the State for public use only, and not to be continued when the consideration for which they were granted no longer existed. And besides, a grant in perpetuar», of the privilege of using the surplus water of the canal would be, by reasonable intendment, contingent upon the perpetuity of the corporation, as otherwise there would be no surplus water, as such, not required for the purposes of the canal.
In the case of Jessup v. Loucks, supra, a navigation company had a right, under their charter, to build and maintain dams for the purpose of their navigation, and to *669 sell surplus water. They granted to a predecessor of defendants, his heirs and assigns forever, the full use of the water not wanted for the navigation; with privilege to keep the dam in question in good order. The works fell into entire disuse; the defendants rebuilt the dam, and claimed to maintain it under the grant. It was held, that the company had no power to grant the rights claimed. The user by the company having ceased, and the works being abandoned, the authority of the company over them ceased with the user, and the easement acquired reverted to the owners of the property from whom taken. The grant itself being of an incident connected with or arising out of the principal object in chartering the company, necessarily expired with the principal. In the nature of things, there could be no fee- simple estate in it. The grant might be perpetual, if the works continued to be so, but its perpetuity would depend upon that. The company could not be compelled to keep up their works, in order to furnish a surplus water to fill the terms of the grant. Property taken in the name of the public, for public and general use, could not be diverted to private and individual purposes.
It is provided in section 19 of the act incorporating the Canal Company, that in consideration of the expenses the corporation would be subjected to in constructing the canal and other works therewith connected, and in improving and keeping the same in repair, the canal and all such other works, together with all tolls, rents, and profits arising therefrom, should be vested in the stockholders, their heirs and assigns forever, as tenants in common, in proportion to their respective shares, exempt and free from the payment of any tax, imposition, or assessment. But the power was reserved to the Statfe, at any time after the expiration of fifty years from the time of the completion of the canal, to purchase and hold all that part thereof lying within the limits of this State. And by section 23, the act of incorporation was to be deemed a public act, and to *670 be benignly and favorably construed for tlie purposes therein expressed, in all courts and places whatsoever. These sections refer more to the position of the company, as against the commonwealth, than-as against individuals whose property might be appropriated under the-right of eminent domain. As against the State, -section 19 would be liberally construed in favor of the corporation, but there would be no presumption in favor of the corporation as against individuals whose lands had been appropriated for public use, and which public use had ceased.
Various pleas of the statute of limitations were filed by the defendants in the court below, but, in our view, they do not constitute a valid defence to the original action, and as they do not seem to have been relied upon in any stage of the proceedings, we deem it unnecessary to consider them.
Finding xro error iix the judgment and proceedings of the court below, the judgment of the court of common pleas must be affirmed.

Judgment accordingly.