## ST. JOSEPH VALLEY RAILWAY CO. *v.* GALLIGAN.

DEEDS—CONSTRUCTION—EASEMENTS—WATERS.

> One who conveys to a railroad company for a right of way the natural bed of a creek, and a strip of adjacent land, specifying in the deed that the latter grant is for the unobstructed flow of the diverted waters, "and for no other purpose, except to keep the banks on either side properly piled, planked, and protected from washing," and reserving the right to "cover" the creek, and, when so covered, to use and occupy all space to the line of the railroad right of way, is not restricted to a covering by platform, but may place a shop building over the stream in such way as not to obstruct it; the grantee having an easement merely, which does not affect the grantor's title or possession.

Appeal from Berrien; Coolidge, J. Submitted April 18, 1899. Decided June 28, 1899.

Bill by the St. Joseph Valley Railway Company to restrain Michael J. Galligan from covering a creek with a building. From a decree dismissing the bill, complainant appeals. Affirmed.

*Sam H. Kelley*, for complainant.

*A. P. Cady*, for defendant.

LONG, J. The only question in this case is, the construction to be placed upon the language contained in a deed from defendant to complainant. It appears that defendant was the owner of lot 12 in block 1 in Thresher's addition to the city of Benton Harbor. On December 5, 1896, defendant and wife conveyed by warranty deed to complainant, for a cash consideration, a part of said lot, the description being as follows:

"All that part of lot number twelve in block one in Thresher's addition to the village, now city, of Benton

Harbor, lying west of Ox creek, as located according to annexed plat, being that part of lot twelve lying west of a line beginning fifty-four feet west of the northeast corner of said lot twelve; running thence south, twenty degrees and thirty minutes east, seventy-five feet; thence south, sixty degrees and thirty minutes east, thirty-three feet, to a point at the alley thirty-four feet west from the southeast corner of said lot twelve; also a right of way fourteen feet wide immediately east of said described line, to allow Ox creek to flow unobstructed, and for no other purpose, except to keep the banks on either side properly piled, planked, and protected from washing. Parties of the first part except from the operation of this deed, and expressly reserve to themselves, their heirs and assigns, the right at any time to cover Ox creek wherever it touches or crosses lot twelve aforesaid, and, when so covered, to use and occupy all space and land to the line of said railway right of way first above mentioned. Together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining."

This deed was put in escrow pending the fulfillment of a certain contract executed at the same time of the execution of the deed, which contract is as follows:

"This contract and agreement, made and entered into this 5th day of December, 1896, between Michael Galligan, of Benton Harbor, Michigan, party of the first part, and the St. Joseph Valley Railway Company, a corporation, party of the second part, witnesseth:

"*Whereas*, the said first party has sold to said second party, and conveyed by warranty deed, part of lot number twelve in block one, Thresher's addition to the city of Benton Harbor, and has also conveyed the right of way for Ox creek over said lot, according to the description in said deed and the annexed plat thereof:

"*Now, therefore*, in consideration of the premises, and other valuable considerations, the said railway company, its successors and assigns, hereby agrees to so change the present location of Ox creek so that the angle or turn of said creek will be ten feet south of the southwest corner of the building belonging to said Galligan on said lot. The said railway company is also required to construct at least five piling, at twelve feet apart, on each side of the said creek from Territorial street to the rear end of said building, and to board the same up with two-inch plank.

"These several matters to be done by said railway company are to be done on or before March 1st, 1897; and said railway company is hereby discharged from any and all damages that may hereafter occur by reason of said piling, other than such damages as are directly due to the negligence of said railway company; and said railway company is hereby released from any and all damages that may have heretofore occurred by reason of the construction of said road or said Ox creek. Said piling to be oak, at least sixteen feet long, and not less than ten inches in diameter at the butt end. The covenants and agreements herein made to be binding on the said parties, their heirs, administrators, successors, and assigns.

"It is hereby agreed that, should said railway company desire, it may substitute eight feet piling in lieu of the sixteen feet piling hereinbefore mentioned, provided said railway company shall fill the rear of the lot east of Ox creek and south of the boiler shop with sand to a level with the front of said lot."

Complainant complied with the conditions of the said contract, and by authority of defendant or his agent the deed was delivered to complainant about January 27, 1897.

It was admitted that complainant's roadbed is now operated on the original and natural bed of the creek. In order to so occupy the creek bed, complainant purchased by deed a strip of land 14½ feet wide off the west side of lot 12 for additional roadbed, and also a right of way across defendant's land, 14 feet wide, for a new channel for the creek. On the east portion of said lot defendant had a boiler shop, and about February 15, 1897, he began making preparations to remove it over and upon the piling along the banks of said creek, so that the boiler shop would be directly over the creek, and be immediately adjacent to the bridge across the creek, which bridge is the entire width of Territorial street. Complainant filed its bill to restrain the defendant from moving said building over said Ox creek, and, upon a hearing of said cause, the temporary injunction, issued at the time of the filing of the bill of complaint, was dissolved, and the court dis-

missed the bill of complaint, and assessed damages against the complainant in the sum of $139, together with $20 fees to the circuit court commissioner and costs to be taxed, whereupon complainant appealed. The question is whether or not the word "cover," as used in the deed, authorized the defendant to remove his boiler shop over the creek. Defendant contends that it did.

We think the court was correct in his construction of the deed, and in holding that the defendant might place his shop there. The deed, so far as concerns this portion of the land, grants only a right of way for Ox creek "to flow unobstructed, and for no other purpose," except, as stated in the deed, "to keep the banks on either side properly piled, planked, and protected from washing." The right to cover Ox creek wherever it touches or crosses lot 12 is expressly reserved by the grantor, with the right, "when so covered, to use and occupy all space and land to the line of said railway right of way," etc. This grant amounts to no more than an easement, and in no way affects the title or possession of the grantor. *Morrill* v. *Mackman*, 24 Mich. 279 (9 Am. Rep. 124). The grantee had a qualified possession only so far as it might be needful for its enjoyment. *Morrill* v. *Mackman, supra.* It appears that the only purpose for which the complainant desired the premises was for the making of a new channel for the creek, and for the flow of the water therein. The defendant surrendered no possession except for that purpose, and at the same time he reserved the right to cover and use it for his own purposes. Complainant contends that this covering was only to be by platform. There is no such limitation in the exception in the deed, and it cannot fairly be inferred from the testimony that that was the understanding between the parties.

The decree below must be affirmed.

The other Justices concurred.