[Civ. No. 10841. First Appellate District, Division Two.—August 19, 1938.]

NORMAN E. DIERSSEN et al., Appellants, v. THOMAS H. McCORMACK et al., Respondents.

Grove J. Fink and Garton D. Keyston for Appellants.

Downey, Brand & Seymour and F. R. Pierce for Respondents.

SPENCE, J.—Plaintiffs sought to enjoin defendants from diverting water from a certain irrigation ditch and to recover damages. The cause was tried by the court sitting without a jury and from a judgment in favor of defendants, plaintiffs appeal upon the judgment roll. The plaintiffs may be hereinafter referred to as the Dierssens; the defendants Thomas H. McCormack and Clara H. McCormack as the McCormacks; and the defendants Isador Schad and Augusta Schad, as the Schads.

The parties are adjoining property owners on Sherman Island. All of the properties front on the north bank of the San Joaquin River at a point where said river forms a large arc, running in a general southwesterly direction. The Dierssen and Schad properties were formerly one tract held by the Dierssens and Schads as tenants in common. Said tract was roughly triangular in shape with the river forming the hypotenuse thereof. The McCormack tract was roughly rectangular in shape and adjoined the Dierssen and Schad property on the west, the common boundary line running approximately north and south. In 1916, the Dierssens and Schads partitioned their lands by agreement, the Dierssens taking the northerly two-thirds thereof and the Schads taking the southerly one-third thereof. The line dividing their respective portions ran in a northwesterly direction from a point on the river to a point on the common boundary with the lands of the McCormacks.

The ditch, which is the subject of this controversy, constitutes the enlargement and extension of a previously ex-

isting ditch, which last mentioned ditch was, for the most part, situated in what is known as Gavigan Slough. Said slough was formerly a natural watercourse but since the development of the levees on the river, and the reclamation of Sherman Island, said slough has been cut off from the river. It has been dry except during the rainy season. The trial court found that the slough extended "from the San Joaquin river to a point near the boundary line between the lands of defendants Schad and McCormack, thence northwesterly through and across the lands of Schad and McCormack and thence northeasterly through the lands of plaintiffs." With respect to the previously existing ditch to which reference has been made, the trial court found that for the purpose of bringing water therein for irrigation purposes, "defendants and their predecessors in interest for many years prior to the commencement of this action, constructed and thereafter used, maintained and operated", (a) a siphon and pipes for the purpose of diverting water from the river into the slough, (b) an irrigation ditch in the channel of said slough for "the entire length thereof excepting for portions thereof where said ditch follows the boundary line between the lands of defendants Schad and McCormack, and which said ditch and the channel of said slough were so maintained and operated for the purpose of carrying water therein and to subirrigate the lands of defendants; and (c) lateral ditches leading from said irrigation ditch across the lands of said defendants and each and all of them for the purpose of diverting waters from said ditch onto said lands of defendants for surface irrigation". It was further found that prior to October 17, 1916, the date of the partition above mentioned, "the rights in and to said irrigation system were owned, used, enjoyed and possessed jointly by said defendants Schad, said plaintiffs and the predecessors in interest of said defendants McCormack".

The enlarged ditch was subsequently developed under an agreement between the Dierssens and the Schads. The trial court found with respect thereto that between 1916 and 1920, "plaintiffs, and defendants Schad did construct said irrigation ditch by enlarging, altering and lengthening said slough ditch; that said ditch as so enlarged lies in part along the same course and is a part of the irrigation system herein-

above referred to, being partially along and across the lands of defendants Schad and partially along, and immediately adjacent to, the boundary between said lands and the lands of defendants McCormack, and thence over and across plaintiffs' lands. That after the construction of said ditch, to wit, on or about the spring of the year 1920, plaintiffs and defendants Isador and Augusta Schad, and (from and after the spring of 1923) the defendants McCormack and each and all of them, commenced to use said ditch, and thereafter and ever since said time have continued to use the same for the purposes at the times and in the manner as hereinafter set forth. That the use of said ditch by said defendants Mc-Cormack, and each and both of them, has at all times been with the full permission and consent of defendants Schad and each and both of them.''

The agreement, under which said enlarged ditch was constructed and maintained, was entered into between the Dierssens and the Schads immediately after the partition of their lands in 1916. The Schads thereby granted to the Dierssens a perpetual right of way over their lands for said purpose. Said agreement was included in the findings of the trial court. The right of way is described therein and the obligations of the Dierssens and the Schads with respect to the construction and maintenance thereof is set forth in detail. Then follows a clause reading, ''Reserving to the party of the first part, said Isador Schad, his heirs, executors and assigns, the right and privilege of using said ditch and siphon for the entire distance the same shall traverse the lands of said party of the first part, and to withdraw water therefrom for the irrigation of the lands of said Isador Schad as herein provided for.''

With respect to the use of the water in the ditch, it was provided, ''Said party of the first part, Isador Schad, his heirs, executors and assigns, shall have the entire flow of water in said ditch flowing through the first two siphons installed for supplying water to this ditch and all water can flow through said first two siphons for ten full days in each month, to-wit: on the 1st, 4th, 7th, 10th, 13th, 16th, 19th, 22nd, 25th and 28th day of each month. The parties of the second part, their heirs, executors and assigns, shall have the entire flow of all water in said ditch for all the remain-

ing days in said month; also such further water as shall flow in said ditch on the ten days specifically mentioned above which shall be conveyed to said ditch either by a third siphon to be installed by said parties of the second part, their heirs, executors and assigns, or by any pumping plant which shall be installed by said parties of the second part, or both, provided, however, nothing herein shall be construed to mean that said Isador Schad shall have less water than hereinabove provided for and allotted to him on said ten days specifically above mentioned.''

It will be noted that the Schads and Dierssens were the parties to said agreement and that the McCormacks were not. No third siphon or pumping plant was ever installed by the Dierssens as provided in the last above quoted provisions of the agreement and the parties have therefore referred to the ten days of each month specified above as the Schad days and to the remaining days as the Dierssen days.

This action was filed in 1933. It was alleged that ''on May 23, 1931 and on divers other dates before and after May 23, 1931,'' defendants had diverted water from the ditch. This allegation was specifically directed at one of the Dierssen days and was not specifically directed at any other particular day, whether a Schad day or a Dierssen day. The trial court found that it was not true that defendants or any of them had diverted water on said May 23, 1931, but that they had diverted water on the Schad days ''and not otherwise''. Appellants state in their briefs that there is no finding ''which says that respondents McCormack restricted their use of the water to the Schad days''. This statement is incorrect as the trial court not only made the findings last mentioned but also found ''that it is not true that defendants, or any of them, have performed any of the acts in said complaint complained save to the extent and in the manner hereinabove set forth''. Said findings were responsive to all of the issues made by the pleadings as to the days upon which respondents diverted the water and, as this is an appeal upon the judgment roll alone, it must be assumed that there was ample evidence to sustain said findings.

The position of appellants is summarized in their reply brief where they state that they complain of ''the use

by the respondents McCormack on their land on any days (whether Schad days or Dierssen days) of water from the irrigation system constructed pursuant to the agreement above referred to''. As the findings were against appellants as to any use of the water by any of the respondents on the Dierssen days, and as they concede the right of Schads, under the agreement, to the use of the water on the Schad days, the question here is confined to whether the findings show that any right of appellants was violated by the use of the water by the McCormacks on the Schad days.

Before passing to a consideration of the specific contentions of appellants, it should be stated that the trial court found and concluded that no right of appellants had been violated. It found that the Schads, as owners of the land and under the terms of the agreement, had the right to permit the diversion and use of said water from said ditch on the McCormack lands on the Schad days and that the diversion and use of said water by said McCormacks was with the permission and consent of the Schads. It further found that the use made by the McCormacks of the water from the ditch did not result in any damage to appellants, but, on the contrary, was of benefit to appellants by affording them irrigation to certain high lands adjacent to one of the laterals.

Appellants contend that ''the agreement is inconsistent with the findings'' and that ''the findings are inconsistent and irreconcilable requiring a reversal of the judgment''. Respondents take the position that there is no inconsistency in the findings; that McCormacks had the right to use the ditch by reason of the ownership and use of the original irrigation system; that McCormacks had the right to use the ditch on the Schad days by reason of the permission from the Schads; that no rights of appellants have been violated; and that even if appellants had any rights which were violated, such rights have long since been taken adversely. These and other points are raised by respondents in support of the judgment but it does not appear to be necessary to discuss all of them.

Appellants concede that their rights are to be measured by the terms of their agreement with the Schads. It is by reason of the incorporation of this agreement into the findings, that appellants contend that the findings are incon-

sistent and irreconcilable. We are of the opinion that appellants' claim respecting the effect of said agreement may not be sustained and that their claim that the findings are inconsistent and irreconcilable is without merit. In view of the conclusions which we have reached, it appears proper under the findings before us to confine our discussion to the effect of said agreement and to the right of the McCormacks to the use of the water on the Schad days under permission from the Schads.

When said agreement was entered into, the Schads were the owners of the fee simple title to the land. They thereby granted an easement to the Dierssens. A reservation was contained in said grant and it is upon the wording of said reservations that appellants place their greatest reliance. Said wording is set forth above together with other provisions of the agreement. Appellants take the position that under said agreement, the right of the Schads extended only to the use of the water upon the Schad days and then only to the use thereof upon the Schad lands. In other words, they claim that the effect of the use of the words "for the irrigation of the said lands of said Isador Schad", as contained in the reservation was to place a limitation upon the rights of the Schads, which limitation prevented them from permitting the use of the water on other lands even on the Schad days. Taking the agreement by its four corners and giving consideration to the fact that these words were contained in a reservation by the owners of the fee who were making the grant, we do not believe that appellants' position is tenable.

The law is jealous of the claim of an easement (19 Cor. Jur. 958) and likewise of the extent of the rights claimed under an instrument granting an easement. The rule is that every incident of ownership not inconsistent with the easement and the enjoyment of the same, is reserved to the grantor. (*Colegrove W. Co.* v. *City of Hollywood,* 151 Cal. 425 [90 Pac. 1053; 13 L. R. A. (N. S.) 904]; *Hoyt* v. *Hart,* 149 Cal. 722 [87 Pac. 569]; *Galletly* v. *Bockius,* 1 Cal. App. 724 [82 Pac. 1109].) As was said in *Hoyt* v. *Hart, supra,* at page 728, "It is well settled, as a general proposition, that the owner of the servient estate may use his property in any manner and for any purpose consistent with the

enjoyment of the easement." This principle is consonant with the statutory provision that "a reservation in any grant, . . . is to be interpreted in favor of the grantor". (Civ. Code, sec. 1069.) We are therefore of the opinion that the reservation in the grant before us should not be construed to limit the place of use of the water by the grantors on the Schad days as ordinarily a grant should not be held to be enlarged by reason of the wording of a reservation. (*Walker* v. *Lillingston,* 137 Cal. 401 [70 Pac. 282]; *Duross* v. *Singer,* 224 Pa. 573 [73 Atl. 951]; *St. Joseph Valley Ry. Co.* v. *Galligan,* 120 Mich. 468 [79 N. W. 685].) This rule may be qualified by stating that it should not apply where the intention to so enlarge the grant clearly appears from a reading of the entire instrument but such was not the case here. We are therefore of the opinion that the findings and conclusions of the trial court to the effect that the Mc-Cormacks had the right to divert and use the water on the Schad days as found by the court by reason of permission from the Schads and that no rights of appellants were violated by such diversion and use are entirely consistent with the findings and conclusions that the Schads and Dierssens had entered into said agreement whereby certain rights were conferred upon the Dierssens. We conclude that there is no inconsistency in the findings as claimed by appellants and that said findings sustain the judgment as entered.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 7, 1938, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 17, 1938.