[Civ. No. 164. Fifth Dist. Feb. 20, 1963.]

FLORENCIO SERRANO et al., Plaintiffs and Appellants, v. C. V. GRISSOM et al., Defendants and Respondents.

C. Ray Robinson and John E. Whiting for Plaintiffs and Appellants.

Preston, Braucht & George, H. C. George and Guernsey Carson for Defendants and Respondents.

STONE, J.—Appellants filed this quiet title action for the purpose of preventing respondents' use of a roadway. Respondents cross-complained, alleging a right of way by prescription, and prevailed in the trial court.

Appellants are husband and wife, as are respondents. For convenience the parties will hereinafter be referred to in the singular.

Appellant and respondent own adjoining parcels of farm land with a common line forming appellant's south boundary and respondent's north boundary. Before either party owned his respective parcel, a rough roadway consisting of wheel tracks ran across the southeast corner of appellant's land, then southerly along the boundary between the two parcels, to a county road at the west boundary. The purpose of the roadway was to provide access from Poole Road on the east side of appellant's property, to a county road on the west side.

When appellant purchased his property the southern por-

tion was "wild land," that is, unleveled and uncultivated. Travelers wishing to get from Poole Road on the east to the county road on the west did not bother to follow the east and south boundary lines, but simply cut across the uncultivated land, leaving a triangle of untilled, unleveled land in the southeast corner below the roadway.

Reliable evidence reflects that respondent and others used the roadway prior to 1955, the year when respondent purchased his property. For that matter, there is evidence that appellant, too, used the roadway before purchasing his property in 1953. During December 1955 appellant leveled the southern portion of his property, and in doing so obliterated the angling roadway across the corner. He had a surveyor lay out a new roadway parallel to the east and south boundaries and some 350 feet southeast of the original location, making allowance for a small creek meandering through the corner of the property. This new road was graded, and later surfaced. No objection to the relocation and improvement was made by respondent.

Respondent had a pumping plant located on his property, near the common boundary of the two parcels and about equidistant from the east and west boundaries. The roadway along the common boundary swerved slightly to respondent's pump and then back to the property line. During 1955 respondent suggested grading and graveling the roadway from a point opposite his pump west to the west boundary of appellant's property. Appellant was agreeable, and it was further agreed that the roadway should be straightened out to run along the property line, to eliminate the slight curve to respondent's pump. The cost of these improvements was shared equally by appellant and respondent.

The court found that respondent had established a right by prescription to use the entire roadway.

Appellant attacks the judgment on two grounds: First, that respondent's use of the roadway was permissive; second, that the changed location of the roadway terminated any prescriptive rights respondent had acquired prior to relocation. As we have noted, one segment of the road, that from the pump west, was realigned and improved by mutual agreement of the parties. The other segment leading from the pump east and around the southeast corner of appellant's property, was realigned and improved by appellant, acting unilaterally. We shall therefore consider appellant's con-

303

tentions on appeal separately as to each segment of the road-
way.

Taking up, first, the roadway from respondent's pump west
to the boundary of appellant's property, respondent's use of
that portion as early as 1953 is unquestioned. Furthermore,
the use was open, notorious and continuous, so that the five-
year period necessary to establish a prescriptive right to use
the roadway (Civ. Code, § 1007; Code Civ. Proc., § 318)
would appear to have run by the time the complaint was
filed on March 18, 1960. Appellant contends, however, that
respondent's use became permissive in December of 1955
when appellant and respondent straightened, graded and
leveled the road from the pump west.

The record does not disclose that respondent ever asked
permission to use the roadway from the west boundary to
his pump. Nor can it be inferred from the conversation
had between the parties relative to the road that respond-
ent sought permission or that appellant gave permission for
its use. In suggesting improvements to the roadway and ask-
ing appellant to pay half the cost thereof, respondent was as-
serting a right.

Appellant stresses respondent's payment of one-half the
cost of the improvements as evidence of permissive use.
Standing alone, improving or paying for the improve-
ment of a right of way is insufficient to prove a permissive
use. Certainly it will not serve to set aside the trial court's
finding of adverse use. An argument similar to that made
by appellant was reviewed in *O'Banion* v. *Borba,* 32 Cal.2d
145 [195 P.2d 10]. In commenting upon payment of the
cost of improving an easement during the prescriptive pe-
riod the Supreme Court said, at pages 151-152 of *O'Banion*:

"On the claim that the use of the easements was permis-
sive, defendants refer to conversations with plaintiff O'Banion
when the defendants erected the fences in 1945 to the effect
that he went to defendants to see if the roads could be
opened, and discussed the payment of $85 to defendants
to obtain an opening, and to alleged admissions by plaintiff
O'Banion in his deposition to the effect that he obtained the
permission of Miller and Lux, defendants' predecessors, to
use the easements.

"Nothing more than a conflict in the evidence is involved.
As to both instances to which reference has been made it
must be remembered that there is testimony that no permis-

sion for the user was sought of anyone at any time. The user was open, notorious and adverse.''

Thus, whether use of an easement has been adverse and under claim of right or has been permissive and with the owner's consent, is a question of fact which is resolved by a reviewing court in the same manner and in accordance with the same principles that govern the determination of issues of fact in any other civil case. It was held in *Van Amersfoort* v. *Young,* 105 Cal.App.2d 22 [232 P.2d 569], at page 25, that,

''Whether the use of an easement is adverse and under a claim of right, or permissive and with the owner's consent, and the nature of the user is sufficient to put the owner on notice, are questions of fact. If there is any substantial evidence to support the judgment, it must be affirmed. All conflicts must be resolved in favor of the prevailing party and the evidence viewed in a light most favorable to him.'' (See also *O'Banion* v. *Borba, supra,* p. 147.)

There is sufficient evidence of a substantial nature to sustain the finding of the trial court that respondent's use of the segment of the roadway from the pump west was adverse and for a period of more than five years prior to filing of the complaint.

Appellant argues that it was impossible for a five-year period of adverse use to have elapsed because a new road was created in November of 1955 when the roadway was straightened, graded and graveled, less than five years before this action was filed in March of 1960. However, realignment of the roadway did not have the effect claimed by appellant, for two reasons. First, it was a minor change and served merely to straighten a slight curve in the road. Insofar as the easement itself is concerned, it was an inconsequential variation. Second, and more importantly, the change was made by mutual consent.

It is well established that if the owners of the dominant and servient lands by mutual consent substitute a new route for an easement, any rights theretofore existing are not affected by the change; rather they attach to the new location. (*Zunino* v. *Gabriel,* 182 Cal.App.2d 613, 618 [6 Cal.Rptr. 514]; *Vargas* v. *Maderos,* 191 Cal. 1 [214 P. 849]; *Conner* v. *Lowery,* 94 Cal.App. 323 [271 P. 118].)

*Vargas* v. *Maderos, supra,* involved a more decided change of location than occurred in the instant case, yet the Supreme Court held at page 3: ''We have thus far ignored the fact that the roadway used at the time the respective par-

ties purchased their respective lots of land was plowed up by the plaintiff in such fashion that it could not subsequently be used as a right of way and the parties by mutual consent substituted therefor a newly located way, which was subsequently used by the defendant. In view of this acquiescence the rights of the parties were transferred to the new location. . . ."

We conclude that since realignment of the roadway west from the pump to the west boundary was minimal and was accomplished by mutual agreement of the parties, the trial court did not err in finding that respondent's use of that portion of the roadway was continuous and adverse to appellant from 1953.

We turn now to the other segment of the roadway, that running east from the pump. We shall first consider appellant's contention that a new roadway was created by the change in location of this segment within the five-year period preceding the filing of the action. We find an entirely different factual situation from that pertaining to the roadway west from the pump. In the first place, the roadway across the southeast corner of appellant's property was not moved by mutual consent. Appellant by unilateral action leveled the south one-third of his property in 1955 and in doing so, plowed up the road that ran across the corner of the property. Thereafter he farmed the land formerly covered by the roadway.

After leveling the land, appellant had his surveyor lay out a new road some 100 yards south by southeast of the old roadway that had angled across the open field. The new road was surveyed to run as near the east and south boundary lines as possible, taking into account the stream that meandered in the area. It can hardly be said that moving a roadway over 100 yards, a distance equal to the length of a football field, and changing it from the hypotenuse of the triangle to the two sides, is minor or inconsequential. Then, too, the original roadway consisted simply of wheel tracks which followed the natural, uneven contour of the land. It was more of a trail than a road, while the new roadway as laid out by the surveyor, was level and graded.

We are impelled to conclude that by plowing up the wheel-track road and farming the area which it formerly crossed, and by building a new, surveyed and graded road in a different location, appellant created a new roadway. And since

appellant made these changes without respondent's consent, any prescriptive rights in the old roadway which respondent may have acquired terminated with the obliteration of that roadway.

It was respondent's burden to affirmatively prove the essential elements of adverse use. (*Clarke* v. *Clarke,* 133 Cal. 667, 669 [66 P. 10] ; *Dooling* v. *Dabel,* 82 Cal.App.2d 417, 421 [186 P.2d 183].) The five-year period of adverse use required by Civil Code section 1007 and Code of Civil Procedure section 318, commenced in December of 1955 with construction of the new road, and less than five years elapsed before this action was commenced in March of 1960. Therefore respondent failed to establish a prescriptive right to an easement in the east portion of the roadway.

The view we take of the change in location of the right of way around the southeast corner of appellant's property makes it unnecessary to consider appellant's contention that the use of this segment of the roadway was permissive.

The judgment is affirmed as to the portion of the roadway from the pump west, that is, the portion improved by mutual agreement of the parties ; the judgment is reversed as to the portion of the roadway from the pump east, with directions to the trial court to enter judgment accordingly.

Conley, P. J., and Brown, J., concurred.

A petition for a rehearing was denied March 21, 1963, and respondents' petition for a hearing by the Supreme Court was denied April 17, 1963.