[Civ. No. 237.   Fifth Dist.   Aug. 22, 1963.]

JOHN W. POPOVICH et al., Plaintiffs and Appellants, v. HARRIET O'NEAL, as Coexecutrix, etc., et al., Defendants and Respondents.

Walter L. Chandler and Miles, Sears & Franson for Plaintiffs and Appellants.

Crossland, Crossland, Richardson & Caswell and William C. Crossland for Defendants and Respondents.

STONE, J.—Plaintiffs-appellants own real property in the upper foothill area of Madera County. Respondents, who are

both defendants and cross-complainants, own land north and south of appellants' property, although on the south there is an intervening parcel of land lying between that of appellants and respondents, which is owned by a person named as a defendant in the original action but who has not appealed.

Before 1900 and at a time when all of the property involved herein was located within Fresno County, a right of way for road purposes was deeded to the county by the predecessors in interest of the present owners. Upon the creation of Madera County, this area was included within its boundaries so that the right of way became a public road of Madera County. State Highway No. 41 was constructed about 1943, and upon its dedication the Board of Supervisors of Madera County abandoned the county road. The easement which appellants claim is upon the former right of way of the abandoned county road. At the time of the abandonment appellants' predecessor in interest had access to Highway 41 on the north and to County Road 200 on the south. However, respondents' predecessor in interest obstructed the entrance from the abandoned road to Highway 41 by installing a locked gate in the fence which bordered Highway 41. This locked gate forced appellants' predecessor in interest to travel south to County Road 200 for access to a public road.

Appellants brought this action claiming an easement to use the entire abandoned right of way and, in particular, for access to State Highway 41 on the north. The court found that appellants had an easement southerly from their property along the abandoned right of way to County Road 200. The court also found that respondents' predecessor in interest had closed access to Highway 41 on the north for more than five years prior to the commencement of the action and that appellants had lost any easement northerly across respondents' property to State Highway 41 on the north by prescription. Judgment was entered accordingly.

Counsel for appellants and respondents devote much of their briefs to an interpretation of the doctrine of abutter's rights and, in particular, to whether appellants as abutters acquired an easement to both Highway 41 on the north and County Road 200 on the south. We deem it unnecessary to discuss these questions for two reasons. First, respondents have not appealed from the judgment that appellants have a right of way for access to County Road 200 on the south. Indeed, they stipulated during the course of the trial that appellants could have, and did have, an easement to use the abandoned

right of way from appellants' property to County Road 200 on the south. ■ Second, there is substantial evidence supporting the finding that appellants lost by prescriptive extinguishment any easement for access they may have had to Highway 41 on the north.

Appellants' attack on the evidence to support the finding as to prescription simply creates a conflict in the evidence as to this issue. There was credible testimony that respondents and their predecessor in interest, as early as 1946, effectively blocked passage from the abandoned road to State Highway 41 by a locked gate. A number of disinterested witnesses testified that no one was allowed to pass through the gate without the permission of respondents' predecessor in interest. The record further reveals that appellants and their predecessor in interest at no time had a key to the lock on the gate. Appellants' contention that they were never prevented from entering Highway 41 by way of the abandoned county right of way from 1946 to 1962 was countered by testimony to the contrary. At one time the gate was knocked down, but within a matter of a day or two respondents replaced the gate with a solid fence. There was testimony that respondents also used the abandoned roadway as cattle-feeding areas, that they spread potatoes on the roadway, and that they established salt licks thereon at several places. ■ Whether respondents and their predecessor in interest by hostile and adverse acts prevented appellants from using their easement of access to Highway 41 for the prescriptive period of five years is a question of fact. ■ This court will not reweigh the evidence on appeal. ■ Furthermore, the evidence must be viewed in a light most favorable to respondents. (*O'Banion* v. *Borba,* 32 Cal.2d 145, 147 [195 P.2d 10]; *Serrano* v. *Grissom,* 213 Cal.App.2d 300 [28 Cal. Rptr. 579].)

■ It is settled law that an easement, whether acquired through a grant, adverse use, or as an abutter's right, may be extinguished by the owner of the servient tenement by acts adverse to the exercise of the easement for the period required to give title to the land by adverse possession. (*Glatts* v. *Henson,* 31 Cal.2d 368, 370 [188 P.2d 745]; Rest., Property, § 506, p. 3090; 17 Cal.Jur.2d § 40, p. 149.)

■ Appellants argue that respondents' maintenance of the locked gate cannot be considered adverse to them, nor serve to extinguish their easement, for the reason that the fence and the gate closing off access to Highway 41 were not located

upon respondents' land. In the area here in controversy, Highway 41 runs generally north and south along the section line between respondents' property and land which was then owned by third parties. However, at the point where Highway 41 crosses the abandoned county road it does not run in a true north-south direction, that is, it does not precisely follow the section line. Thus there was a small wedge of land lying between the section line which was then respondents' property line, and the edge of the state highway. The fence in which the gate was located followed the edge of the highway, so that it was a few feet off respondents' property. It is not contended that respondents' subsequent purchase of the wedge has any bearing on this case.

Appellants cite cases which they suggest stand for the proposition that an obstruction to the use of an easement must be located on the land of the servient tenement before the prescriptive period commences to run. In those cases the facts disclosed that the obstruction was placed on the servient tenement. But we are not persuaded that the hostile acts are thus circumscribed. Certainly such a condition does not seem reasonable in the light of the facts of the case before us since the essential element in extinguishing an easement by prescription is the prevention of the use of the easement by hostile acts. Here, respondents as effectively prevented appellants from using the roadway for access to Highway 41 by maintaining the fence and the gate a few feet west of their property line, as though the fence and gate had been on the property line. The determinative fact on this appeal is that there is evidence in the record which supports the court's finding that the gate and fence maintained by respondents actually prevented appellants from gaining access to Highway 41 for a period exceeding five years prior to the filing of the action.

Appellants also argue that respondents could not deprive appellants of an easement across respondents' property by prescription for the reason that appellants and respondents were cotenants of the easement and one cotenant cannot hold adversely to another. The answer to this argument, of course, is that when the county abandoned the county road, any right or title respondents had to an abutter's easement across their own land merged with their fee title. As fee owners they could not hold an easement for a right of way across their own land. (Civ. Code, § 811, subd. 1; *Highland Realty Co.* v. *City of San Rafael,* 46 Cal.2d 669, 680 [298 P.2d 15]; 17 Cal.Jur.2d, § 41, p. 150.) A *fortiori* re-

spondents could not be cotenants of an easement across their own land with adjoining landowners. Appellants as holders of an easement over respondents' land were the owners of the dominant tenement, while respondents as owners in fee of the land held a servient tenement. The easement was subject to extinguishment by the hostile acts of the fee owners for the period required under the law of prescription.

During the year 1959 one of the respondents came upon appellants' son and a companion hunting in the area near the gate at Highway 41. He told the boys they were not permitted to hunt on respondents' land and he also wrote the father of the boy advising him that none of the appellants or their friends had the right to hunt on respondents' property. Among other things he stated, ''You have an easement of ingress and egress through our property only.'' This letter was written less than five months prior to filing of this action, and appellants state they consider it to be ''most conclusive.'' However, the letter was written long after the prescriptive period which commenced about 1946, had run, and even appellants must concede that the letter lacked the necessary formalities to constitute a conveyance restoring an extinguished easement. At most, the letter constitutes an admission, although it is not clear as to what easement of ingress and egress the admission pertains. In any event, as an admission it is simply an item of evidence which the trial court considered along with all other evidence. Also, the author of the letter had no interest in the property at the time the gate was installed and locked by his father-in-law, his predecessor in interest, nor did the author of the letter acquire any interest in the property until after the prescriptive period of five years had elapsed. The rule that an appellate court will not weigh the evidence and will indulge all intendments and reasonable inferences which favor sustaining the trier of fact (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557]), applies to the letter as an admission along with all other evidence in the record.

The judgment is affirmed.

Conley, P. J., and Brown (R. M.), J., concurred.