[Civ. No. 21899. First Dist., Div. One. Aug. 3, 1965.]

LOUIS C. GUERRA et al., Plaintiffs and Respondents, v. DAVID PACKARD et al., Defendants and Appellants.

Howe, Finch, Spaeth & Sauers, Howe, Finch, Spaeth & Young and Robert P. Schifferman for Defendants and Appellants.

John Corry Fell for Plaintiffs and Respondents.

MOLINARI, J.—This is an appeal by defendants and cross-complainants from the judgment, after a court trial, awarding plaintiffs and cross-defendants an easement across defendants' property and enjoining defendants from interfering with plaintiffs' use and enjoyment of this easement.

*Statement of the Case and the Issues*
*Presented on Appeal*

By their complaint, filed on July 18, 1962, plaintiffs alleged that they are the owners of certain real property situated in the County of Santa Clara; that defendants own the Los Huecos Rancho, formerly known as the McDermott Ranch, also situated in Santa Clara County; and that "plaintiffs are the owners of a right of way for ingress and egress by all means of conveyance, over a strip of land of a width sufficient for the ordinary uses of free passage," over and across this property belonging to defendants. The complaint then describes the route of the purported right of way, alleges that defendants have wrongfully obstructed and disturbed plaintiffs' use and enjoyment of this right of way, and prays for a decree quieting plaintiffs' title to this right of way, for an injunction prohibiting defendants from interfering with plaintiffs' use of their right of way and compelling defendants to remove any existing obstructions to such use, and for "money damages as may be found by the court; . . ."

Defendants filed an answer denying all of the allegations of plaintiffs' complaint, and in addition cross-complained against plaintiffs to quiet title to the Los Huecos Rancho, including the route of the purported right of way, and to obtain injunctive relief against plaintiffs' continued trespasses upon their property. In answer to defendants' cross-complaint, plaintiffs admitted that they claimed an interest in defendants' property to the extent of their alleged right of way; further admitted that they would continue to make entries upon this right of way, but denied that such entries constituted trespasses and that they claimed any other interest in defendants' property. Plaintiffs further denied all other allegations of defendants' cross-complaint.

Upon the completion of the taking of testimony at the trial, the trial judge visited defendants' property and viewed the claimed right of way. Thereafter the trial court entered its findings of fact from which it concluded that plaintiffs had a right of way by prescription to their property over Pine Ridge Road and Bear Trail, but not over Dead Horse Road, and that defendants should be enjoined from interfering with plaintiffs' use of said right of way and plaintiffs should be enjoined from further use of Dead Horse Trail. From the judgment entered thereon this appeal ensued.

On this appeal defendants raise the following issues: (1) Plaintiffs failed to establish all the requirements for a prescriptive right of way over Pine Ridge Road, and to this extent the findings and judgment are not supported by the evidence; (2) the prescriptive right, even if established, would have been extinguished by adverse use of the servient tenement for over five years; (3) plaintiffs could not obtain a prescriptive right of way over the Pine Ridge Road where at all times since 1941 that road had been held, maintained, used and patrolled by the State of California; (4) the trial court lacked jurisdiction to enter judgment since the State of California, an indispensable party, was not before the court; (5) the trial court could not properly confer a prescriptive easement over defendants' ranch without specifying the width of the right of way or the burden which might thereby be imposed upon the servient tenement.

### The Record

Plaintiffs' property for access to which they seek a right of way through defendants' property consists of approxi-

mately 320 acres situated to the north and east of defendants' property. Plaintiffs trace the title to their property back to Glenn Van Siclen, who, on October 20, 1931 under the Stockraising Homestead Act, made an entry on this property, which was at that time part of the public domain. On December 13, 1938, after completion of his homestead requirements, Van Siclen acquired title to this property by patent deed, which deed was recorded on June 13, 1939. The chain of title to plaintiffs' property subsequent to Van Siclen's ownership was stipulated to as follows: Van Siclen conveyed to Harry Damkar by deed dated March 25, 1959, recorded April 2, 1959; by deed dated March 4, 1960, recorded March 7, 1960, Damkar conveyed title to John Yinger, who held the property as constructive trustee for Louis Guerra, et al.; Louis Guerra and Joseph Guerra acquired title to the property by decree dated and recorded November 16, 1960.

During this same period, the chain of ownership of defendants' ranch land was as follows: The ranch was owned throughout the 1930's and until March 23, 1943 by Alfred J. McDermott; on this date, McDermott sold the ranch to Roger Jessup who owned the ranch until he sold it on May 23, 1960 to the present owners, defendants in this action.

Turning to the evidence relating to the right of way which plaintiffs seek to establish, we begin by describing its general course as follows: Beginning at Steeley Road, a county road; through Hogsback Gate, north along the Pine Ridge Road to Sizer Flat; then east along Bear Trail to a fork; then either north continuing on Bear Trail, or further east and then north along Dead Horse Trail, both routes leading to plaintiffs' property. There are four gates on the road between Steeley Road and plaintiffs' property: The Hogsback Gate; a gate along the Pine Ridge Road; a gate on the Bear Trail; and a gate at Willow Springs on the Dead Horse Trail.

In 1931, when Van Siclen homesteaded his property, he inquired at the Sacramento Land Office as to his right of access to this property and was told he had "an exclusive right into my property." When questioned further about the origin of his claim, Van Siclen indicated that he felt that it was on the Pine Ridge Trail, and stated "So I figured I had my rights"; "I read it, just said I had an exclusive access to my property" and "I had access, and to my own frame of mind I wasn't doing nothing. I wasn't trespassing."

Beginning in 1931 Van Siclen traveled along the Pine Ridge Trail and the Bear Trail, then merely horse trails, for the purpose of reaching his property. During the 1930's he traveled this route almost exclusively by foot or on horseback; he had no problem entering the original Hogsback Gate during this period since it was either unlocked, or he obtained a key from friends, or he could enter through gaps in the fence.

In May of 1940, defendants' predecessor in interest, McDermott, entered into an agreement with the State of California, through its State Forester, by which McDermott "licensed" to the state an "easement or right of way" across his property for the purpose of constructing and maintaining a "motorway and firebreak [to] be used by the State Division of Forestry for forest protection, fire prevention and fire suppression purposes." Pursuant to this license agreement, the State Division of Forestry constructed a fire control road over defendants' property, the route of which generally followed the former Pine Ridge Trail, but did deviate somewhat from this trail at certain points.[1] This portion of the forestry road was constructed in about 1941, and from the time of its construction, Van Siclen traveled this road to reach his property. His mode of travel subsequent to 1941 was by automobile, jeep, foot, or horseback.

After the forestry road was constructed, a new Hogsback Gate, some 20 feet below the original gate, was put in. This gate was almost always kept locked, so that after 1941 Van Siclen either left his automobile at the gate and walked in to his property (about one-half of the time), or he maintained his own lock and key, or he obtained a key for the forestry lock from sources other than defendants' predecessors, or he worked a trick link in the gate, or he took the gate itself off its hinges. In 1957, the ranch foreman gave Van Siclen a key to the Hogsback Gate. After the construction of the forestry road, Van Siclen and his friends and guests sometimes traveled this road by automobile.

Between 1931 and 1959, when Van Siclen sold his property, he traveled the Pine Ridge Road and the Bear Trail throughout the year and during both day and nighttime. Various other witnesses testified that they saw Van Siclen on this trail, that they saw his car parked at the end of the Bear

---

[1]The nature and extent of this deviation, and its relevance to plaintiffs' establishment of a prescriptive easement will be hereinafter discussed.

Trail, and that they traveled to his property along the same route with him or alone as his guests. Van Siclen testified that, except for the fact that he received a key to the Hogsback Gate in 1957, he was never given permission to use the Pine Ridge Road or the Bear Trail, and he and other witnesses testified to arguments which Van Siclen had had throughout the years with the foremen of defendants' ranch concerning Van Siclen's use of these roads. In addition, between the years 1930 and 1959, although signs at other locations of defendants' ranch read "Permission to Pass Revocable at Any Time," the only sign on the Pine Ridge Road read "No Trespassing, Los Huecos Ranch."

In 1959, Van Siclen conveyed his property to Harry Damkar. The deed to Damkar contained no mention of a right of way across defendants' property, Van Siclen testifying that Damkar "took it over the way I had it. He was in the same position as me"; and that "he had to make his own arrangements." Damkar testified that he took the property from Van Siclen with the understanding that there was no right of way through defendants' property; that while he held the property, he went through the Los Huecos Rancho by permission of defendants' predecessor, Jessup, and that he never made any claim of a right of way to his property over defendants' ranch.

### The Period to be Considered in Determining Whether Plaintiffs Acquired a Prescriptive Easement on the Pine Ridge Road

Before discussing the question of the sufficiency of the evidence, the first issue raised by defendants on appeal, we deem it necessary to consider and dispose of several preliminary matters, one of which involves the third issue raised by defendants on appeal, namely, whether, in light of the 1940 agreement between defendants' predecessors and the State of California, by which the state was given the right to use Pine Ridge Road as a fire trail, the trial court could properly consider the post-1940 period in determining if plaintiffs had obtained a prescriptive right of way over defendants' property.

We note that in its findings the trial court did not specifically indicate during what five-year period plaintiffs or their predecessors established their prescriptive right to an easement over defendants' property.[2] If, on the one hand,

---

[2]Finding No. 3 begins as follows: "That for more than five years prior to the commencement of this action . . . ."

the trial court based its finding either totally or in part on the actions of Van Siclen prior to the construction of the state forestry road, then the question presents itself as to whether the change of route by Van Siclen in 1941 from the former Pine Ridge Trail to the present forestry road has any bearing on plaintiffs' right to a prescriptive easement. On the other hand, if the trial court based its finding solely on the behavior of Van Siclen subsequent to 1941, then we are confronted with the problem of whether the fact that the state possessed an interest in defendants' property after this date in any way prevents plaintiffs from establishing an easement by prescription.

■ Dealing with the first of these alternatives, we note the California rule with respect to the effect of deviations in the path of the user upon the establishment of a prescriptive easement. This rule is stated in *Matthiessen* v. *Grand,* 92 Cal.App. 504, 510 [268 P. 675], as follows: "The line of travel over a roadway which is claimed by prescription may not be a shifting course, but must be certain and definite. Slight deviations from the accustomed route will not defeat an easement, but substantial changes which break the continuity of the course of travel will destroy the claim to prescriptive rights." (See *Dooling* v. *Dabel,* 82 Cal.App.2d 417, 424 [186 P.2d 183]; 143 A.L.R. 1410; 80 A.L.R.2d 1095.)

■ In the case at bench, pursuant to a request for special findings, the court found that the use of the prescriptive right of way was continuous and uninterrupted over substantially the same route during the prescriptive period; that there was no deviation in the line of travel by plaintiffs' predecessor in interest during such period; and that there was no substantial change of route at the time of the construction of the Pine Ridge Road which would commence again the running of the prescriptive period on the changed location. The evidence pertinent to these findings consisted of the following: The trial judge went onto the property and viewed the claimed easement; Van Siclen,, in response to the question, "Now, does the present road follow, that is, the road that the forestry built, does that follow the route of the original horse trail?" testified as follows: "Yes . . . it is practically the same. It is right along the same route"; and various other witnesses also testified that the route of the forestry road was substantially the same as the original Pine Ridge Trail. These witnesses, however, when questioned as to the distance between the former and present road, indicated

that certain stretches of the present forestry road were anywhere from 150 feet to one-half mile away from the original Pine Ridge Trail.

The trial court's finding that there was no substantial deviation is supported by Van Siclen's testimony coupled with the evidentiary effect of the trial judge's view of defendants' property and of the easement sought to be established by plaintiffs. In *South Santa Clara Valley Water etc. Dist.* v. *Johnson*, 231 Cal.App.2d 388 [41 Cal.Rptr. 846], we recently held that a trial judge's view of the *locus in quo*, with the consent of the parties, may be used either alone or in conjunction with other evidence to sustain findings relating to matters upon which a layman can make a determination and which are ascertainable from such a viewing of the *locus in quo*.

It is our conclusion, therefore, that the trial court's finding on this issue is adequately supported by the evidence, and that any prescriptive use which Van Siclen made of the original Pine Ridge Trail could be tacked to his use of the present road. Assuming for the sake of argument, however, that the trial court's findings that no substantial change of route had occurred cannot be sustained, then we turn to the problem relating to the effect of the agreement between defendants' predecessor and the State of California upon plaintiffs' right to an easement by prescription. ■ Beginning with the case of *Hoadley* v. *San Francisco*, 50 Cal. 265, the rule in California has been clear to the effect that title to lands held by the public for a public use (which term has been held to include public benefit) cannot be acquired by adverse possession. This same rule is, of course, applicable to the acquisition of a prescriptive right against a governmental body. (*Bartholomew* v. *Staheli*, 86 Cal.App.2d 844, 857 [195 P.2d 824].) These rules are not only applicable where the public body holds the title to the property (*Central Pac. Ry. Co.* v. *Droge*, 171 Cal. 32, 40 [151 P. 663]; *People* v. *Pope*, 53 Cal. 437, 451; *Bartholomew* v. *Staheli*, *supra*, p. 857), but have also been applied to situations in which the public body held merely an easement in the property. (*County of Sacramento* v. *Lauszus*, 70 Cal.App.2d 639, 651-652 [161 P.2d 460]; *People* v. *Sayig*, 101 Cal.App.2d 890, 898 [226 P.2d 702].)

In the instant case, defendants argue that the State of California was granted an easement or right of way over the Pine Ridge Road and that, therefore, from the time of the grant of such easement in 1940 no prescriptive rights could

be asserted in the subject roadway because such rights cannot be asserted against the state once the public easement attached. Since this argument rests upon the premise that the state possessed an easement over the Pine Ridge Road, it is incumbent upon us to determine whether the state's interest in defendants' property can properly be classified as an easement. The subject agreement between the state and defendants' predecessor, McDermott, refers to the latter as the "Licensor" and to the state as the "Licensee." It provides that "The Licensor . . . does hereby *license* to the Licensee as easement or right of way for the purpose of constructing and maintaining a Motorway and Firebreak over and across the above described property for the purpose of fire protection." (Italics added.) A license in respect to real estate is an authority to do a particular act, or series of acts, on another's land without possessing an estate therein. (*Emerson* v. *Bergin,* 76 Cal. 197, 201 [18 P. 264]; *Bryant* v. *Marstelle,* 76 Cal.App.2d 740, 746 [173 P.2d 846]; *Fisher* v. *General Petroleum Corp.,* 123 Cal.App.2d 770, 776 [267 P.2d 841].) An easement, unlike a license, creates an incorporeal interest in land, and is generally defined as an " 'interest in land created by grant or agreement, express or implied, which confers a right upon the owner thereof to some profit, benefit, dominion, or lawful use out of or over the estate of another.' " (*Mosier* v. *Mead,* 45 Cal.2d 629, 632 [290 P.2d 495]; *Elliott* v. *McCombs,* 17 Cal.2d 23, 30 [109 P.2d 329]; *City of Hayward* v. *Mohr,* 160 Cal.App.2d 427, 432 [325 P.2d 209].)

In the instant case, in addition to the agreement itself, the trial court had before it the stipulation of the parties that "The 'Pine Ridge' road is used as a state fire control road under a *license agreement*" (italics added), and the testimony of George Britton, a State Forest Ranger in Santa Clara County, that the state did not have any property rights in the road excepting permission to construct, maintain and use it for fire protection, and that all rights to the road were retained by the property owner.[3] Although no

---

[3]Ranger Britton testified as follows: "Q. (By Mr. Young) Now, under these agreements, Mr. Britton, does the Forestry Department have any authority to allow the use of their roads to any other persons? A. We don't have any authority. I don't think we object to other use of the road, but there's nothing transferred to the Forestry except the permission to construct, permission to maintain and use it for fire prevention and fire protection purposes. The road itself is and all rights are strictly retained by the property owner. We do not record these documents so they do not become a formal lien on the property."

claim was made in the court below that the subject agreement was ambiguous so as to permit extrinsic evidence, the testimony of Britton was received without objection. ▮ If no extrinsic evidence had been received we would not be bound by the trial court's interpretation of this agreement since its construction would be one of law. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257]; *Santa Clara Properties Co.* v. *R.L.C., Inc.,* 217 Cal.App.2d 840, 847 [32 Cal. Rptr. 333].) ▮ Where extrinsic evidence is received without objection it may be considered by the appellate court in ascertaining whether inferences can be drawn from the written agreement and the surrounding circumstances to support the trial court's finding relative to the intention of the contracting parties. (*Santa Clara Properties Co.* v. *R.L.C., Inc., supra,* p. 847.) ▮ Accordingly, where extrinsic evidence is received to aid in the interpretation of the agreement, and the parol evidence is such that conflicting inferences can be drawn therefrom, the appellate court will accept or adhere to the trial court's interpretation since the question of the agreement's meaning is one of fact. (*Santa Clara Properties Co.* v. *R.L.C., Inc., supra,* p. 847; *Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319]; *Walsh* v. *Walsh,* 18 Cal.2d 439, 444 [116 P.2d 62].)

▮ Turning to the instant case in the light of these principles, we are of the opinion that, notwithstanding the trial court's reception of the extrinsic evidence, the interpretation of the subject agreement is a question of law because the extrinsic evidence did not present any conflicting inferences. ▮ Interpreting the agreement by its four corners only we would interpret it as a license and not as an easement. By its terms it evinces a clear intention to give the state a license for the purposes indicated. The words "easement" and "right of way" are not used in the sense that a permanent interest in the land is acquired by the state, rather they are used to describe the nature of the license or privilege authorized, that is, a right of way to pass over McDermott's land. This interpretation is, moreover, supported by the stipulation of the parties and by Britton's testimony, which is such that no other conflicting inference could be drawn therefrom. Assuming *arguendo* that such conflicting inferences could be drawn, our interpretation apparently coincides with that of the trial court. ▮ Although no specific finding was made on this issue, and al-

though the trial court's findings do not indicate the period during which the rights of prescription were acquired by plaintiffs' predecessors, in the absence of any request for such specific finding by defendants on the subject issue, we are entitled to conclude under the doctrine of "implied findings" that any such omitted finding is supplied on the basis that it follows by necessary implication from more general findings made by the trial court. (See 2 Witkin, Cal. Procedure (1954) Trial, § 118, pp. 1850-1851 and cases therein cited.)

We accordingly conclude that title to the fee remained in defendants' predecessors and in defendants after 1941 and that plaintiffs and their predecessors would in no way be prevented from acquiring an easement by prescription as against this title. It is our conclusion, therefore, that even if Van Siclen's use of the reconstructed forestry road after 1941 constituted a substantial change of route from his previous travel along the original Pine Ridge Trail, plaintiffs could nonetheless found their prescriptive rights upon his use subsequent to 1941. Accordingly, in dealing below with the sufficiency of the evidence to support the trial court's finding of a prescriptive right in plaintiffs, we consider evidence relating to the acts of plaintiffs' predecessors both before and after the construction of the fire road in 1941.

It should be noted here that since Damkar testified that his use of the Pine Ridge Road as access to his property was solely permissive and without claim of right, his acts were not of the type required to establish a prescriptive easement. Accordingly, even if plaintiffs acted in the manner required to establish a prescriptive easement for the two years during which they owned their property prior to the commencement of this action, they could not tack to the period of their prescriptive user Damkar's previous period of possession, extending for approximately one year, during which no adverse claim was made. (See 3 Powell, Real Property, § 413, pp. 441, 455-456.) Therefore, plaintiffs' prescriptive rights must rest entirely upon a showing of acquisition by Van Siclen of a prescriptive right during his occupancy. However, if a prescriptive easement was in fact acquired by Van Siclen, this right of way became an incident of the land and, unless expressly excepted by the terms of any of the relevant grants, it was transferred to successive owners of the dominant tenement. (Civ. Code, § 1104.)

## The Sufficiency of the Evidence

Defendants assert that the findings upon which the trial court based its conclusion that plaintiffs had established an easement by prescription over defendants' property do not find support in the evidence.[4] Prior to the consideration of the evidence, we shall reiterate several established principles relevant to the establishment of a title by prescription.

A prescriptive right to an easement in a roadway over the real property of another person may be acquired only upon a showing of an open, continuous, notorious and peaceable use, adverse and under a claim of right, for the statutory period of five years. (*Dooling* v. *Dabel, supra,* 82 Cal.App.2d 417, 421; *Smith* v. *Skrbek,* 71 Cal.App.2d 351, 358 [162 P.2d 674]; *O'Banion* v. *Borba,* 32 Cal.2d 145, 149-150 [195 P.2d 10]; Civ. Code, §§ 1000, 1006, 1007; Code Civ. Proc., § 325.)

"The claim of right must be communicated to the owner of the land, or the use of the roadway must be so obvious as to constitute implied notice of the adverse claim." (*Smith* v. *Skrbek, supra,* p. 358; *Dooling* v. *Dabel, supra,* p. 421.) The burden is on one who claims such prescriptive right to affirmatively prove the essential elements thereof. (*Smith* v. *Skrbek, supra,* p. 358; *Dooling* v. *Dabel, supra,* p. 421; *Serrano* v. *Grissom,* 213 Cal.App.2d 300, 306 [28 Cal.Rptr. 579].) "The questions whether the use of the easement is adverse and under a claim of right, or permissive and with the owner's consent, and whether the nature of the user is sufficient to put the owner on notice, are questions of fact and if there is any substantial evidence to support the judgment it must be affirmed. All conflicts must be resolved in favor of the prevailing party and the evidence viewed in the light most favorable to him." (*Castillo* v. *Celaya,* 155 Cal.App.2d 469, 472 [318 P.2d 113]; *O'Banion* v. *Borba, supra,* pp. 149-150.)

Defendants' first contention in regard to the sufficiency of

---

[4]The findings which establish plaintiffs' right to an easement across defendants' property are as follows: "3. That for more than five years prior to the commencement of this action plaintiffs and their predecessors in interest traveled over a strip of land of a width sufficient for the ordinary uses of free passage over and across the lands of defendants and cross-complainants the route of which travel was as follows: [Description] Such travel was for ingress to and egress from the lands of plaintiffs as described in Paragraph II of plaintiffs' Complaint herein, and was by motor and draft-animal drawn vehicle, horse and foot, open, notorious, adverse, hostile, and continuous, under a claim of right to do so, which claim of right was communicated to the defendants and their predecessors in interest and which travel was not consented to by such defendants or their predecessors in interest."

the evidence is that plaintiffs failed to prove that their predecessors communicated their claim of right to defendants' predecessors during the prescriptive period. ▮ It is well established that an easement cannot be acquired by prescription unless the party whose rights are affected thereby has knowledge of the adverse nature of such use. (*Clark* v. *Redlich*, 147 Cal.App.2d 500, 508 [305 P.2d 239]; *Clarke* v. *Clarke*, 133 Cal. 667, 670 [66 P. 10].) ▮ This knowledge may, however, be either actual or constructive, resulting from notice either express or implied. (*Clark* v. *Redlich, supra*, and cases cited therein.) ▮ In the case at bench, the trial court not only included in its finding No. 3 a finding that plaintiffs had communicated their claim of right to defendants and their predecessors; it also made two special findings to the same effect. Our examination of the record indicates that these findings are amply supported by the evidence. We first note Van Siclen's testimony to the effect that every foreman who had worked for defendants' predecessors had accused him of trespassing and that he invited them to swear out a warrant for trespassing so that the matter could be settled.[5] In addition we note the testimony of various witnesses to the effect that they witnessed numerous heated arguments between Van Siclen and the various ranch foremen concerning Van Siclen's use of the Pine Ridge Road. And finally we note the testimony of Thomas Evan Rosa, who stated that on one occasion when he was on defendants' property en route to Van Siclen's cabin, Mr. Kruse, the foreman of defendants' ranch, stopped him, and he told Kruse that he was going to visit Van Siclen. It is apparent from such evidence that the foremen of defendants' ranch were aware of Van Siclen's claim of right to an access road across defendants' property. And since it was also established in

---

[5]Van Siclen's testimony in this regard was as follows: "Q. And you never objected to this arrangement? In other words, you never went to the property owners and made any claim, did you, that you had a right to be on it? A. I asked every foreman who was up there. There was Fred Hanks, Sam Young was up there. When I wasn't there, right after I got there, there was Fred Hanks. There was Johnny Salamento. There was Fred Kruse. There was Tom Gilligan. I know four or five of them. I told them any time that you fellows—they squawked at me that I was trespassing. I says, 'Any time that you want, I'll be any place on that trail, any time of the day, I wished you would swear out your warrant and would go and settle this thing.' And they wanted me to go ahead like Mr. Guerra is doing now. And I never had the money to do that. So I says, 'You go ahead.' And I says, 'That is what I want you to do.' I couldn't even hire an attorney them days."

the record that defendants' predecessors in interest were absentee owners of their ranch and that the ranch was therefore controlled and managed by the various foremen hired by the respective owners, we conclude that notice of Van Siclen's claim to a right of way can be imputed to defendants' predecessors.

Defendants' second contention is that plaintiffs proved only a permissive use, which is insufficient to establish a prescriptive right. The principle of law which defendants state is, of course, correct. (*Los Angeles Brick etc. Co.* v. *City of Los Angeles,* 60 Cal.App.2d 478, 489 [141 P.2d 46]; *Jones* v. *Tierney-Sinclair,* 71 Cal.App.2d 366, 371 [162 P.2d 669].)

██ The trial court found in its finding No. 3 and its special finding No. 2 that plaintiffs' use of the access road was neither permissive nor consented to. The record is replete with evidence in support of this finding. In the first place, the evidence which we have cited above in regard to the arguments between Van Siclen and the ranch foremen negates any finding of permission or consent by defendants' predecessors to Van Siclen's use of the Pine Ridge Road. Secondly, contrary to defendants' contention, the record discloses that the only sign located on the Pine Ridge Trail was a simple "No Trespass" sign. Thirdly, we note that Van Siclen testified that prior to 1957 he at no time received a key to the Hogsback Gate from the ranch owners or foremen. This evidence, we conclude, amply supports the trial court's finding that Van Siclen's use of defendants' property for access to his own property was at all relevant times adverse and nonpermissive.

As a third contention, defendants argue that "Plaintiffs showed that access was gained by stealth," thus disproving the existence of a prescriptive right. In support of this argument, defendants cite evidence relating to the means by which Van Siclen opened the Hogsback Gate, for example, by using a "trick link" or by lifting the gate off its hinges.

██ The rule with regard to the acquisition of a prescriptive easement requires only that the *use* by which one establishes a prescriptive right be open and notorious. (*Thompson* v. *Pioche,* 44 Cal. 508, 517-518; *Thomas* v. *England,* 71 Cal. 456, 459 [12 P. 491].) ██ The means by which entry is made is of no relevance in determining a prescriptive right. ██ In the case at bench, plaintiffs clearly established that their predecessor, Van Siclen, openly and notoriously traveled the Pine Ridge Road to his property. We have

already set out much of the evidence which supports the trial court's finding No. 3 in this regard. In addition, we note the testimony of a number of witnesses, including Van Siclen, that Van Siclen and his guests traveled the described route across defendants' property all year round, and during both day and nighttime. Accordingly, there is no merit to defendants' argument that plaintiffs failed to establish open and notorious use of the subject easement.

Defendants' fourth contention is that plaintiffs failed to prove a continuous and uninterrupted use of the subject road. As to this argument, defendants state (1) that the statute of limitations did not commence to run in favor of plaintiffs' predecessor, Van Siclen, until his patent issued in 1938; (2) that the maintenance of the locked Hogsback Gate subsequent to 1941 destroyed any incipient prescriptive right which he had acquired; (3) that plaintiffs failed to prove user of a definite and certain course of travel; and (4) that no prescriptive right could be acquired after 1940 when defendants' predecessor gave the State of California a license to use the Pine Ridge Trail as a forestry road. We have already dealt with the last of these contentions and have concluded that the license agreement between the state and defendants' predecessor did not prevent Van Siclen from acquiring a prescriptive easement along the Pine Ridge Road subsequent to 1941.

Adverting to the first of defendants' propositions in relation to this fourth contention, we are of the opinion that the statute of limitations by which Van Siclen established a prescriptive easement over defendants' property began to run in 1931 when Van Siclen first made entry onto his property and began using the Pine Ridge Trail to reach this property. The fact that a patent was not issued to Van Siclen until 1938 is only relevant insofar as it relates to the issue of whether or not Van Siclen could acquire an *appurtenant* prescriptive easement prior to 1938, or in other words, whether the interest which he possessed in his property prior to 1938 was a sufficient interest to which to attach his prescriptive user. It was established at the trial that Van Siclen entered his property under the Stockraising Homestead Act of December 29, 1916. As to the nature and extent of Van Siclen's rights while homesteading his property and before the issuance of a patent to him, we note the case of *Red River & Lake of the Woods R. Co.* v. *Sture,* 32 Minn. 95 [20 N.W. 229], which holds that a settler under the homestead law

acquires a vested interest in the land at the time of his entry, that his inchoate title thereto can only be defeated by failure to perform the conditions required by such law, and that if he complies with these conditions he becomes invested with full ownership and the absolute right to a patent, which, when issued, relates back to the time of entry. Other cases, too, have held that although a patentee's title is inchoate against the United States prior to the issuance of the patent, he has the right of possession, the beneficial interest, and all other rights of ownership (*Knapp* v. *Alexander-Edgar Lumber Co.*, 237 U.S. 162 [35 S.Ct. 515, 59 L.Ed. 894]); his title is absolute against third persons (*Shiver* v. *United States*, 159 U.S. 491 [16 S.Ct. 54, 40 L.Ed. 231]); and he has ample title to maintain or defend a suit concerning the land. (*Thompson* v. *Basler*, 148 Cal. 646 [84 P. 161, 113 Am.St.Rep. 321].) We conclude, therefore, that the rights which Van Siclen possessed prior to 1938 with regard to his property were sufficient to enable and entitle him to acquire a prescriptive easement which would be appurtenant to his property rather than in gross.

As to the second argument relating to the lack of continuity of Van Siclen's use of the subject road, we are of the opinion that the fact that after 1941 the Hogsback Gate was usually locked does not legally constitute an interruption in Van Siclen's prescriptive use of defendants' property. With regard to this problem, Thompson on Real Property contains the following comments: "An interruption to the enjoyment of a right before an easement by prescription has been acquired defeats the acquisition of it; but the mere doing of acts on the land which renders the exercise of the claim less convenient, does not necessarily have that effect. It is as competent for one to acquire a prescriptive easement of passway burdened with gates as to acquire one unburdened." (Vol. 2, § 347, pp. 266-267; see cases cited under fns. 47, 48, 59, 62, 67.) In the instant case, the trial court, by its special findings Nos. 3, 4 and 8, indicates that it found in favor of plaintiffs on the issue as to whether the maintenance of the subject lock served to interrupt Van Siclen's use of the Pine Ridge Road. Since the evidence which we have hereinbefore outlined relative to the various means by which Van Siclen obtained entry through the Hogsback Gate subsequent to 1941 amply supports the trial court's findings that Van Siclen's use of the Pine Ridge Road was not interfered with or interrupted by the maintenance of the locked gate, this

court cannot be called upon to reweigh such evidence on appeal.

With respect to the third argument relative to the definiteness and certainty of the course of travel, defendants assert that since "Plaintiffs proved that they and their predecessors in interest used various courses to reach their property . . . no prescriptive right was obtained." As part of this argument, defendants discuss the fact that the course of the Pine Ridge Road was substantially changed in 1941 and that therefore Van Siclen's prescriptive user did not follow a certain and definite path. We have already considered this point, and have concluded that even if this argument is meritorious so as to preclude the tacking of Van Siclen's prescriptive user prior to 1941 to the reconstructed Pine Ridge Road subsequent to that date, he could nonetheless establish a prescriptive right based on his travel of the Pine Ridge Road between 1941 and 1957. In addition, defendants assert that plaintiffs and their predecessors also used other roads and trails in the area as access to their property. This proposition finds support in the record.[6] However, the existence or nonexistence of alternate routes to a dominant tenement has no relevacy as long as there is evidence of substantial and continuous use of the route claimed to be an easement. We have already discussed the existence of such evidence supportive of the trial court's findings on this issue.

### The Claimed Extinguishment of the Easement

The second issue which defendants raise on this appeal is that plaintiffs' prescriptive right, assuming they had gained such a right, was extinguished by adverse use of the servient tenement for over five years. Defendants rely upon the well-established principle that an easement may be extinguished by acts on the part of the owner of the servient tenement which are adverse to the exercise of the easement for the period required to give title to the land by adverse possession, that is, five years. (*Glatts* v. *Henson*, 31 Cal.2d 368, 370-371 [188 P.2d 745]; *Ross* v. *Lawrence*, 219 Cal.App.2d 229, 232 [33 Cal.Rptr. 135]; *Popovich* v. *O'Neal*, 219 Cal.App.2d 553, 556 [33 Cal.Rptr. 317].) The entire thrust of defendants' argument on this point is based on the fact that sub-

[6]These routes included the Packwood Valley Road; the Blue Ridge Trail; the Old Government Trail or the Cold Flat Trail; and the Middle Ridge Trail.

sequent to 1941, the Hogsback Gate, which was maintained by the state under its agreement with defendants' predecessor, McDermott, was kept locked. As we have already indicated the evidence was such as to justify the trial court's finding that this locked gate did not prevent or obstruct Van Siclen's use of the Pine Ridge Road. What we have said in regard to such finding is equally applicable to the issue of fact as to whether the locking of the gate constituted an act adverse to the exercise of the easement for the required period of five years so as to extinguish the easement. ▇ If we consider plaintiffs' prescriptive right to have been established prior to 1941, the question of whether the locked gate thereafter prevented Van Siclen from using Pine Ridge Road for the prescriptive period of five years is a question of fact which the trial court resolved in favor of plaintiffs. (See *Popovich* v. *O'Neal, supra,* p. 556.) ▇ If, on the other hand, we consider the prescriptive easement as being perfected subsequent to 1941, our conclusion that the locked gate did not prevent or obstruct Van Siclen's establishment of a prescriptive right, necessarily impels the conclusion that such act cannot be considered adverse to him, nor serve to extinguish his easement.

### The State of California as an Indispensable Party to This Litigation

As a fourth issue on appeal, defendants urge that the State of California is an indispensable party to this action and that, accordingly, the state not being before the court below, the trial court lacked jurisdiction to enter judgment in the instant action. ▇▇ There is no question that the requirement that an indispensable party be before the court is mandatory; that a trial court lacks jurisdiction to proceed in an action in which an indispensable party has not been joined; and that an objection relating to the nonjoinder of an indispensable party may be raised at any time during the trial or on appeal. (*Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 265 [73 P.2d 1163]; *Sime* v. *Malouf,* 95 Cal.App.2d 82, 116 [212 P.2d 946, 213 P.2d 788].) Accordingly, we proceed to consider defendants' contention that the State of California is an indispensable party to the action before us.

Section 389 of the Code of Civil Procedure defines an indispensable party as follows: "A person is an indispensable party to an action if his absence will prevent the court from

rendering any effective judgment between the parties or would seriously prejudice any party before the court or if his interest would be inequitably affected or jeopardized by a judgment rendered between the parties.'' Applying this definition to the facts of the instant case, we have concluded that the State of California is not an indispensable party to the instant action. By this action, plaintiffs sought only to have their right of access across defendants' property established and to protect this right from interference by defendants. In its judgment, the trial court adjudged that plaintiffs had acquired a right of way for travel across defendants' property along the Pine Ridge Road and the Bear Trail and enjoined defendants from interfering with this right of ingress and egress. Accordingly, this portion of defendants' property became the servient tenement with regard to plaintiffs' acquired easement. It is an established rule of law that the owner of the servient tenement retains every incident of ownership not inconsistent with the easement and its enjoyment by the dominant landowner (*Dolske* v. *Gormley,* 58 Cal.2d 513, 519 [25 Cal.Rptr. 270, 375 P.2d 174]; *Pasadena* v. *California-Michigan etc. Co.,* 17 Cal.2d 576, 579 [110 P.2d 983, 133 A.L.R. 1186]; *Dierssen* v. *McCormack,* 28 Cal.App.2d 164, 170 [82 P.2d 212]); that the owner of the servient tenement may make any use of the property which does not unduly interfere with the easement, and that he may transfer to another the right to any use which he has retained and could exercise himself. (*Pasadena* v. *California-Michigan etc. Co., supra,* p. 579; *Dierssen* v. *McCormack, supra,* pp. 170-171.)

 In light of these principles the perpetuation by defendants of the license which their predecessors gave to the State of California to maintain and use a portion of this same route as a fire road is neither inconsistent with plaintiffs' right to travel this road nor does it interfere with plaintiffs' use and enjoyment of this easement. Conversely, the fact that plaintiffs have been adjudged the owners of an easement which included the forestry road in no way interferes with or prejudices the rights of the State of California to use and maintain its fire road. Contrary to defendants' argument on this point, we cannot see how the court's order requiring defendants to furnish plaintiffs with keys or lock combinations for the various gates along the route of the easement ''interferes with the State's control of its motorway and leads to possible obstruction or interference with

discharge by the State of its fire-prevention and fire-fighting functions.''

The cases which defendants cite as authority for the indispensability of the state as a party to this litigation are clearly distinguishable. In each of these cases the relief which the plaintiffs sought would clearly and vitally affect the interests of the parties which were held to be indispensable. As we have pointed out, such is not the case with regard to the interest of the State of California in the matter before us. ▮ Accordingly, we conclude that the state is not an indispensable party to this action and that the trial court had jurisdiction to proceed to hear this matter and to enter judgment without the joinder of the State of California.

### The Adequacy of the Description of the Easement

The final issue which defendants raise on this appeal concerns the description of the subject easement contained in the judgment. Defendants contend that this description is insufficient as to the width of the easement and the extent of allowable user. ▮ The judgment provides that plaintiffs are the owners of an easement and right of way for ingress to and egress from their lands ''by motor or draft-animal drawn vehicle, horse or foot, over a strip of land of a width sufficient for the ordinary uses of free passage, over and across the lands of defendants,'' and then describes the route of the easement from its commencement point at the intersection of Steeley Road and Pine Ridge Road along Pine Ridge Road and Bear Trail, with particular reference to certain physical monuments, compass directions and longitudinal and latitudinal designations.

▮ Insofar as the width of the easement is concerned, the rule relating to the adequacy of description is stated in the case of *Leverone* v. *Weakley,* 155 Cal. 395, 398 [101 P. 304], as follows: ''[T]he property affected must be described in the pleadings with such certainty as to enable the party against whom the claim is made to definitely know exactly what portion of his property is so claimed, and the judgment establishing the validity of the claim must be definite and certain as to the property affected.'' (See also *Harrison* v. *Bouris,* 139 Cal.App.2d 170, 176-178 [293 P.2d 98].) ▮ In the instant case, although the easement is initially described as ''over a strip of land of a width sufficient for the ordinary uses of free passage,'' it is apparent from the subsequent description of the route of the easement that it is

in fact an established road, namely, the Pine Ridge Road and the Bear Trail. When this fact is considered in conjunction with the initial statement as to the width of the easement, it is apparent that defendants are adequately apprised as to the exact location of the route and its width. Accordingly, we conclude that the judgment is sufficient in terms of its description of the width of plaintiffs' easement.

Defendants' second point in relation to the description of the easement which is contained in the judgment is equally without merit. While the term "motor vehicle" may on paper encompass a user which is broader than that to which plaintiffs are in fact entitled, we are of the opinion that when this term is read in conjunction with the rest of the description contained in the judgment, plaintiffs' use of the easement is by necessity limited to those types of motor vehicles which are physically capable of traveling the Pine Ridge Road and Bear Trail. Obviously with such qualification defendants' property is not subject to the "merciless pounding of . . . gargantuan vehicles" which they suggest as a possible consequence of the judgment as it now reads.

The judgment is affirmed.

Sullivan, P. J., and Sims, J., concurred.